IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| TONY RAY COBBS, SR., | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 4:11-cv-00011 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| BOTTLING GROUP, LLC, | ) | By: Jackson L. Kiser |
| | ) | Senior United States District Judge |
| Defendant. | ) | |

On November 23, 2011, Defendant Bottling Group, LLC ("Pepsi") filed its Motion for Summary Judgment ("the Motion") against *pro se* Plaintiff, Tony Ray Cobbs, Sr. ("Cobbs"). Pepsi supported the Motion with an affidavit, deposition testimony, and evidentiary support. Cobbs filed a brief response indicating his intention to file affidavits in support of his claims, but including none. I heard oral arguments on the Motion on December 16, 2011, at which time Cobbs again failed to offer any support for his claims. The Motion is now ripe for decision and, for the reasons stated below, I will GRANT Defendant's Motion for Summary Judgment and DISMISS this case from the docket of the Court.

### I. STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

Defendant Pepsi hired Plaintiff Cobbs to work as a Relief Merchandiser at its Danville, Virginia, facility on April 1, 2002. Cobbs worked in several different positions between 2002 and 2007, and in 2007 he was assigned to work as a Merchandiser for Pepsi's South Boston/Chase City route. Wal-Mart, one of Pepsi's biggest clients, is serviced by the South Boston/Chase City Merchandiser. As such, Cobbs was instructed to report to the Wal-Mart in South Boston by 6:00 a.m. on the days Wal-Mart was to be serviced. (See Cobbs Dep. 72:19-20, Oct. 18, 2011.) At oral argument, Pepsi clarified that Cobbs's job description required him

- 1 -

physically to be punctual and physically present at the assigned vendors to manage stock rotation and orders.

Prior to his assignment as a Merchandiser, Cobbs received numerous disciplinary warnings relating to both attendance and performance issues. (Hudak Aff. ¶ 5.) According to Jennifer Hudak, the Senior Human Resources Manager over Pepsi's Danville facility, Cobbs received no less than nine documented reprimands between 2002 and 2006. (Id.) In February of 2006, Cobbs was rated "Fail" with regard to his attendance. (Def. Mem. in Supp. Mot. for Summ. J. [hereinafter "Def. Mem."] Ex. 5 [ECF No. 32].)

Cobbs's attendance did not improve after being assigned to the South Boston/Chase City route in 2007. On January 28, 2008, Cobbs was explicitly warned, in writing, about his performance issues. In a memo from John Hyler, Cobbs's supervisor, Cobbs was warned:

> As we have previously discussed, I am concerned about the continued poor performance that you have exhibited over the last few months. Tony, among the issues addressed with you in our meetings, here are the items I expect to see improvement: 1. Report on time at assigned accounts. . . . In order for you to remain at PBG, you must meet the expectations of your position. . . . [T]he following standards must be met or exceeded: . . . 2. Report on time Sunday and Monday Wal-Mart South Boston 6:00 are. Rt. 210.

(Id. Ex. 6.)

Following this warning, Cobbs called the company's Alert-Line on January 29 to complain about Hyler forcing him to drive a company vehicle during work hours. (Id. Ex. 12.) Although the report lists the caller as "Anonymous," Cobbs admits he called. (Cobbs Dep. 151:19.) The only complaint alleged in the Alert-Line report concerns the use of the company vehicle. (Def. Mem. Ex. 12.) No further complaints are documented.

- 2 -

Case 4:11-cv-00011-JLK-RSB   Document 37   Filed 12/21/11   Page 2 of 13   Pageid#: 292

Despite the January 28 warning, Cobbs continued to exhibit attendance problems. On February 3, 2008, Cobbs reported to Wal-Mart at 6:28 a.m.; Cobbs contended he arrived between 6:15–6:17. (Id. Ex. 7.) He was also late the following day, reporting his own arrival time as 6:15. (Id. Exs. 7, 8.) On May 26, 2008, Cobbs clocked in at the Danville facility at 6:09 a.m., at which point he had to drive to South Boston to service Wal-Mart, meaning he could not have arrived any earlier than 6:45 a.m. (See id. Ex. 9.) In fact, Cobbs clocked in at the Danville plant no earlier than ten to fifteen minutes prior to the time he was supposed to be in South Boston on thirty-two different occasions, indicating that he was late to his assigned account on each of these occassions. (See id.) On May 28, 2008, Cobbs was suspended and received the following written warning: "This document and suspension will serve as a **FINAL chance** warning as it relate to his [sic] continued employment with the Pepsi Bottling Group. At any time Tony fails to comply with any/all company policies and/or procedures as well as fails to meet all performance expectations in each assigned account will result in termination of employment." (Id.)

Nevertheless, Cobbs again reported late to Wal-Mart on Monday, June 2, his first day back from his suspension. Although Cobbs claimed to have arrived at Wal-Mart at 6:10 a.m., the employee assigned to cover Cobbs's route when he did not arrive at the Danville plant on time reported to John Hyler that Cobbs arrived around 6:45 a.m. (See id. Ex. 11.) Despite Cobbs's protest that "[t]his whole document isn't true, I have [a] written statement from Walmart to verify my time of arrival and etc.," he was terminated on that date. (Id. Ex. 11.)

Following his termination and receipt of his Right to Sue letter, Cobbs tried on two prior occasions to bring suit *in forma pauperis*. On his third attempt, IFP status was granted. (See Order to Proceed Without Prepaying Fees or Costs [ECF No. 2].) Pepsi filed a Motion to

Dismiss, alleging that Cobbs's claims were res judicata. (Def. Mem. In Supp. of Mot. to Dismiss 7 [ECF No. 7].) That Motion was denied. (Order Denying Motion to Dismiss [ECF No. 23].) On November 23, 2011, Pepsi filed the present Motion for Summary Judgment and Brief in Support, which included an affidavit, deposition testimony, and documentary evidence in support. (Def. Mem. Exs. 1-12.) Cobbs filed a short reply on December 2, 2011, stating he would "produce Affidavits that will contradict write ups that I (pro se) received during my employment at Bottling Group, LLC ("Pepsi"). Along with requested documents, they will show that reasons for terminations [sic] was false and pretexted [sic] for calling company's Alert-line and complaining of disparate treatment." (Pl. Opp. to Mot. for Summ. J. [hereinafter "Pl. Opp."] 1.) Plaintiff never filed such supporting documentation. At oral argument on December 16, 2011, Cobbs still failed to produce any evidence whatsoever to support his claims.[1]

## II. STANDARD OF REVIEW

Summary judgment is appropriate where there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); George & Co. LLC v. Imagination Entertainment Ltd., 575 F.3d 383, 392 (4th Cir. 2009). A genuine dispute of material fact exists "[w]here the record taken as a whole could . . . lead a rational trier of fact to find for the nonmoving party." Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009) (internal quotation marks and citing reference omitted); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute cannot be found where there is only a scintilla of evidence favoring the nonmovant; rather, a court must look to the quantum of proof applicable to the claim to determine whether a genuine dispute exists. Scott v. Harris, 550 U.S. 372, 380

---

[1] Although Plaintiff never filed a Notice of Hearing regarding the December 16, 2011, oral argument as required by the Pretrial Order in this case (see Pretrial Order ¶ 5 [ECF No. 11]), Cobbs did not object to going forward with the argument despite his lack of official notice of the hearing. Cobbs was present and stated that he was prepared to proceed with argument on the Motion.

(2007); Anderson, 477 U.S. at 249–50, 254.  A fact is material where it might affect the outcome of the case in light of the controlling law.  Anderson, 477 U.S. at 248.  On a motion for summary judgment, the facts are taken in the light most favorable to the non-moving party insofar as there is a genuine dispute about those facts.  Scott, 550 U.S. at 380.  At this stage, however, a court's role is not to weigh the evidence, but simply to determine whether a genuine dispute exists making it appropriate for the case to proceed to trial.  Anderson, 477 U.S. at 249.  It has been noted that "summary judgment is particularly appropriate . . . [w]here the unresolved issues are primarily legal rather than factual" in nature.  Koehn v. Indian Hills Cmty. Coll., 371 F.3d 394, 396 (8th Cir. 2004).

The movant has the initial burden of pointing out to the court where the deficiency lies in the non-movants's case that would make it impossible for a reasonable fact-finder to return a verdict in the non-movants's favor.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A moving defendant may show that he is entitled to judgment as a matter of law by demonstrating that the plaintiff could not prove an essential element of his case.  Id. at 322–23.  It is then up to the plaintiff to demonstrate to the court that there are genuine issues of material fact and that he has made a sufficient showing on each of the essential elements of his case.  Emmett v. Johnson, 532 F.3d 291, 297 (4th Cir. 2008); Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996).  When the defendant provides affidavits and other materials with his motion for summary judgment, the plaintiff must respond with affidavits, deposition testimony, or as otherwise provided in Rule 56(c).  Celotex Corp., 477 U.S. at 324; Pension Ben. Guar. Corp. v. Beverley, 404 F.3d 243, 246 (4th Cir. 2005).  Mere allegations, denials, references to the complaint, or oral argument is insufficient to rebut a defendant's motion which is supported by affidavits.  FED. R. CIV. P. 56(e)(2); Berckeley Inv. Group, Ltd. V. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006);

Beverley, 404 F.3d at 246. "If the non-moving party has the burden of proof at trial, that party must set forth facts 'sufficient to establish the existence of an element essential to that party's case.'" Berckeley Inv. Group, Ltd., 455 F.3d at 201 (quoting Celotrex Corp., 477 U.S. at 322).

### III. ANALYSIS

Plaintiff's *pro se* Complaint appears to allege two causes of action: discrimination (disparate treatment) and retaliation on the basis of his race under Title VII. (See Compl. ¶ G.2, G.3, G.6.) To establish a claim of disparate treatment under Title VII, Cobbs must establish: (1) he is a member of a protected class; (2) he has satisfactory job performance; (3) he was subjected to adverse employment action; and (4) similarly situated employees outside of his protected class received more favorable treatment. Prince-Garrison v. Md. Dep't of Health and Mental Hygiene, 317 Fed. App'x 351, 353 (4th Cir. 2009) (per curiam) (unpublished) (citing Holland v. Washington Homes, Inc., 487 F.3d 208, 214 (4th Cir. 2007)). "The elements of a prima facie retaliation claim under Title VII are: (1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010) (citing Mackey v. Shalala, 360 F.3d 463, 469 (4th Cir. 2004)).

#### A. DISPARATE TREATMENT

As stated above, Plaintiff bears the burden of establishing a prima facie case of disparate treatment discrimination. In its summary judgment motion, Pepsi contends that Cobbs has failed to offer evidence that he suffered an adverse employment action or that Pepsi treated him differently than similarly-situated employees of a different race. Moreover, Pepsi argues that, even if Cobbs has carried his burden to establish the prima facie case of discrimination, it has offered evidence of a legitimate, non-discriminatory reason for its actions, and that Cobbs cannot

- 6 -

Case 4:11-cv-00011-JLK-RSB   Document 37   Filed 12/21/11   Page 6 of 13   Pageid#: 296

establish that Pepsi's proffered reasons for its decision to terminate Cobbs were a mere pretext for discrimination. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–05 (1973); see also Lettieri v. Equant, Inc., 478 F.3d 640, 646 (4th Cir. 2007); Holland, 487 F.3d at 218; Hux v. City of Newport News, 451 F.3d 311, 315 (4th Cir. 2006).

For purposes of Title VII, an "adverse employment action" is focused on "what could be characterized as ultimate employment decisions such as hiring, firing, granting leave, discharging, promoting, and compensating." Page v. Bolger, 645 F.2d 227, 233 (4th Cir. 1981). Pepsi argues that the adverse employment action of which Cobbs complains is "[b]eing required to drive a company vehicle . . . ." (Def. Mem. 12.) It contends that Pepsi's insistence that Cobbs drive a company vehicle as opposed to his own is not an "adverse employment decision" that can sustain a claim of disparate treatment. In his deposition, Cobbs stated that his desire to drive his own car "won't [sic] about the money," but was about his desire to listen to the radio. (Cobbs Dep. 154:17.) This, Pepsi contends, establishes that the decision has nothing to do with a "significant change in benefits," and therefore cannot be considered an adverse employment decision. Cobbs did not respond to this argument in his brief. (See Pl. Opp. 1–2.)

Pepsi's argument, although correct, fails to address Cobbs's actual allegations. Although he does make passing reference to Pepsi's practice of allowing some drivers to use their own automobiles, the failure to allow him to drive his own car does not constitute the crux of his discrimination claim. He states in the Complaint: "[B]oth [Plant Manager Jimmy Ellington and Supervisor John Hyler] filed false documents against myself on numerous occasions . . . [h]arassing on the job with threats of write-up, job performance, and termination." (Compl. ¶ G.3.) Clearly, Cobbs was terminated, and termination is the quintessential adverse employment action. Because I am required to view the facts in the light most favorable to the non-moving

party, I can easily conclude that Cobbs suffered an adverse employment action separate and apart from his allegation that he was required to drive a company vehicle.

Pepsi also argues that there is no evidence to support the claim that Pepsi treated Cobbs differently than similarly-situated coworkers. According to Pepsi, Cobbs's only claim is that *replacement* drivers are permitted to drive their personal vehicles while *permanent* drivers, like Cobbs, are required to drive company vehicles. In fact, Cobbs conceded (presumably in his deposition (see Def. Mem. 13)) that, when he was a relief driver or when he was assigned to fill in on another route, he was allowed to drive his own car and not required to drive the Pepsi vehicle. Cobbs's failure to point to any similarly-situated driver who was treated differently, Pepsi argues, warrants summary judgment.

Cobbs did not respond to this argument in his brief in opposition. (See Pl. Opp. 1.) In his deposition, however, Cobbs essentially agreed with Pepsi's argument that replacement drivers were allowed to drive their own vehicles. He agreed that, when he was a Relief Merchandiser or when he "filled-in and backed-up people on the Danville route," he drove his own car. (Cobbs Dep. 145:8–16.)

Pepsi is correct with regard to the complete lack of evidence to support Cobbs's claim. Cobbs has not offered any evidence by way of deposition testimony, affidavit testimony, or documentary evidence to support the conclusion that only he or that only African-American drivers were subject to the requirement that company cars be driven on permanent routes. Additionally, there is no allegation and no evidence that only African-American employees suffered adverse employment action for arriving late to work.[2] Cobbs's status as a *pro se* litigant

---

[2] Although Pepsi does not address the claim in this section of its brief, Cobbs was ultimately fired for repeatedly failing to report to Wal-Mart in South Boston—one of Pepsi's biggest clients—by 6:00 a.m. In fact, he admits that this was the reason for his termination. (See Cobbs Dep. 189:7–9 ["Q. And then you were eventually terminated as a result of being late on June 2nd, right? A. Yes."].)

- 8 -

does not absolve him of the very basic requirement imposed by the Rules and the applicable law to prove and support his case. His failure to do so is fatal to his action. Cf. Berckeley Inv. Group, Ltd., 455 F.3d at 201 ("If the non-moving party has the burden of proof at trial, that party must set forth facts 'sufficient to establish the existence of an element essential to that party's case.'" (quoting Celotrex Corp., 477 U.S. at 322)). In short, although Cobbs maintains that he was treated unfairly, there is simply no evidence to show that Pepsi treated Cobbs differently than every other employee. In this regard, Cobbs is unable to establish this essential prong of the prima facie case, and Pepsi is entitled to summary judgment.

### B. RETALIATION

Cobbs's second claim is for retaliation. (Compl. ¶ G.3.) Pepsi's argument on this count is simple: Cobbs did not complain of conduct prohibited under Title VII. According to Pepsi,[3] Cobbs complained in January of 2008—*after* he received a warning regarding his repeated late arrivals—about Pepsi's policy of using personal vehicles. Moreover, Cobbs cannot offer any evidence to rebut Pepsi's proffered reason for his termination—his chronic, documented tardiness, about which he was repeatedly warned.

Yet again, Cobbs offers no substantive response to these claims beyond the blanket assertion that he "will produce Affidavits that . . . will show that reasons for termination was

---

[3] The specific content of Cobbs's Alert-Line complaint is vague, as Cobbs has not offered any evidence regarding the content of his complaint. Pepsi maintains—on the basis of heavily circumscribed deposition testimony—that Cobbs's only complaint to the Alert-Line was regarding the use of personal vehicles. Pepsi's own record of Cobbs's Alert-Line call supports this version. (See Def. Mem. Ex. 12.) Although I must view the evidence in the light most favorable to Cobbs, he has not produced any evidence whatsoever to contradict Pepsi's record of the complaint. Accordingly, he is no entitled to an favorable inference.

- 9 -

Case 4:11-cv-00011-JLK-RSB   Document 37   Filed 12/21/11   Page 9 of 13   Pageid#: 299

[sic] false and pretexted [sic] for calling company's Alert-Line and complaining of disparate treatment." (Pl. Opp. 1.) He does not offer any additional evidence to support his claim.[4]

Pepsi argues that there is no evidence that Cobbs engaged in a protected activity, and that the controlling legal authority compels summary judgment for Pepsi. In order to succeed on a claim of retaliation based on a complaint, the complainant must have complained about an act that could objectively be thought to be discrimination. In Jordan v. Alternative Resources Corp., the Fourth Circuit addressed whether the plaintiff could have objectively believed he was opposing an unlawful employment practice under Title VII when he complained about a co-worker's racist comments. 458 F.3d 332 (4th Cir. 2006). The Court noted that if the employee subjectively believed he was complaining about an unlawful employment practice—and if that belief was objectively reasonable—the complaint was a protected activity. Id. at 340. If the employee did not believe he was opposing an unlawful employment practice, or if that belief was not objectively reasonable, his complaint would *not* be a protected activity, and a claim of retaliation based on that complaint would fail as a matter of law. Id.

In Jordan, an African-American employee was in a room with several co-workers who were watching news coverage of the arrest of the suspected D.C. snipers. Immediately after the arrests of John Allen Muhammad and Lee Boyd Malvo were reported on the news, one co-worker said out loud: "They should put those two black monkeys in a cage with a bunch of black apes and let the apes f*** them." Jordan, 458 F.3d at 336. Jordan discussed the comment with other co-workers, who informed Jordan that the person who made the statement had made similar, racial comments before. Id. Jordan complained to his supervisor and, "[a] month later

---

[4] Cobbs did attach Pepsi's Responses to Cobbs's Request for Production of Documents, as well as Cobbs's Second Request for Production of Documents. (See Pl. Opp. Exs. 1, 2.) No documents are included with these exhibits.

- 10 -

Jordan was fired, purportedly because he was 'disruptive,' his position 'had come to an end,' and management personnel 'don't like [him] and [he] don't like them.'" Id.

On appeal, the Fourth Circuit held that it was not objectively reasonable to believe that complaining about a single comment was a protected activity because the single comment did not indicate the presence of a hostile work environment:

> On the question of whether Jordan was complaining of an actual hostile work environment made unlawful by Title VII, we conclude that he was not. While Farjah's comment on October 23, 2002 (or October 24) was unacceptably crude and racist, it was an isolated response directed at the snipers through the television set when Farjah heard the report that they had been arrested. Because the remark was rhetorical insofar as its object was beyond the workplace, it was not directed at any fellow employee. Moreover, it was a singular and isolated exclamation, having not been repeated to Jordan or in his presence before or after October 23, 2002. Jordan does not and cannot allege in his complaint that Farjah's comment altered the terms and conditions of his employment. Based on all that Jordan knew, Jordan concluded that the remark reflected unacceptable racism and should not have been made. And while we agree with Jordan's sentiment, we conclude that such an allegation is a far cry from alleging an environment of crude and racist conditions so severe or pervasive that they altered the conditions of Jordan's employment with IBM or ARC. The complaint does not describe a workplace permeated by racism, by threats of violence, by improper interference with work, or by conduct resulting in psychological harm.

Id. at 339–40. In the present case, even taking the facts in the light most favorable to Cobbs, it is not objectively reasonable to believe that he was complaining about discrimination at Pepsi. When he complained to the Alert-Line, he complained about being made to drive a company vehicle. Pepsi asserts that Cobbs's complaint was merely in response to its most recent admonition of his tardiness, but that is inconsequential. No person could objectively believe that such a complaint indicated the presence of a hostile work environment; nor could any person believe that Cobbs was being treated differently than any other similarly-situated employee given

- 11 -

Case 4:11-cv-00011-JLK-RSB   Document 37   Filed 12/21/11   Page 11 of 13   Pageid#: 301

that Pepsi's policy was well-known and consistently followed. Moreover, Cobbs has not offered evidence of a single instance when a similarly-situated *white* employee was allowed to drive his own personal vehicle on his permanent route. If he cannot, then it was neither objectively nor subjectively reasonable for Cobbs to believe he was complaining about disparate treatment; therefore, Jordan compels summary judgment on the retaliation claim. In the absence of any evidence to make Cobbs's complaint appear either objectively or subjectively reasonable, summary judgment is appropriate.

Pepsi also argues that Cobbs is unable to establish that its reason for his termination—his repeated tardiness—was merely a pretext for discrimination. Requiring employees to report to work on time and avoiding excessive expenditures (like mileage reimbursements for the use of personal vehicles) are legitimate business purposes. It is abundantly clear from the record that these are the reasons Cobbs was terminated and, in the absence of any evidence to suggest that Pepsi's valid reasons for termination were pretextual, Cobbs cannot succeed on his claim and Pepsi is entitled to summary judgment. See Price v. Thompson, 380 F.3d 209, 212 (4th Cir. 2004) ("In the McDonnell Douglas framework, the plaintiff must first establish a prima facie case of retaliation, whereupon the burden shifts to the employer to establish a legitimate non-retaliatory reason for the action. If the employer sets forth a legitimate, non-retaliatory explanation for the action, the plaintiff then must show that the employer's proffered reasons are pretextual or his claim will fail.").

## IV. CONCLUSION

Cobb's status as a *pro se* litigant does not permit him to respond to a motion for summary judgment with the blanket assertion that he will be able to prove his case at trial. Cobbs's complete and utter failure to offer any evidence whatsoever to support his allegations against his

former employer require me to grant summary judgment on behalf of Pepsi. Moreover, the record as a whole is clear that Cobbs was terminated for his excessive tardiness and not in retaliation for a complaint that no rational person could objectively or subjectively believe was a complaint about unlawful employment actions. For all these reasons and those stated in open court, I will GRANT Pepsi's Motion for Summary Judgment and DISMISS the case from the active docket of the Court.

The clerk is directed to send a copy of this Memorandum Opinion and accompanying Order to Plaintiff and all counsel of record.

Entered this 21st day of December, 2011.

s/Jackson L. Kiser
SENIOR UNITED STATES DISTRICT JUDGE